STATE OF NORTH CAROLINA v. ANTHONY GENERAL AND JAMES ROBESON

No. 8816SC154

(Filed 20 September 1988)

1. **Criminal Law § 76.2— voir dire hearing—no questioning of witness allowed— defendant not prejudiced**

    The trial court did not err by denying one defendant the right to cross-examine or question a police officer or to present evidence during a voir dire hearing, since there was no statement made by defendants to the witness, and there was therefore no attempt to introduce any evidence that even required a voir dire hearing; the trial court proceeded to allow a voir dire on the admissibility of certain exhibits, although there had been no request to do so, but the court ended the voir dire before one defendant's counsel had a chance to question the witness; and no undue prejudice could have occurred thereby because a voir dire was not necessary at that point, and defendants had a later opportunity to object to admission of the exhibits, which were in fact admissible.

2. **Criminal Law § 162— hearsay evidence—similar evidence subsequently admitted without objection**

    Defendants could not complain that the trial court improperly admitted hearsay evidence with regard to ownership of a car where similar evidence was subsequently admitted without objection.

3. **Criminal Law § 45— bolt cutters—experimental evidence admissible**

    In a prosecution of defendants for possession of implements of housebreaking, the trial court did not err in admitting testimony concerning an experiment with a pair of bolt cutters; furthermore, a proper foundation was laid for admission of the bolt cutters where the witness adequately identified the bolt cutters as those found at the crime scene.

4. **Criminal Law § 61.2— shoe print evidence—admissibility**

    In a prosecution of defendants for possession of implements of housebreaking and attempted breaking or entering, the trial court did not err in admitting testimony concerning shoe print comparison evidence.

5. **Criminal Law § 34— testimony by officer that he knew defendant by another name—evidence prejudicial**

    The trial court erred in allowing into evidence testimony by a police officer that he knew one defendant by another name, that defendant's fingerprints matched those of another individual, and that the officer knew defend-

ant as that individual from another county, since the identity of defendants was not in question in this case and the testimony was not admissible under N.C.G.S. § 8C-1, Rule 404(b) to show identity, and since the testimony implied the commission of other crimes or wrongs by defendant. Even if the testimony did not present evidence of other crimes, wrongs or acts prohibited by Rule 404(b), it was irrelevant and unduly prejudicial.

APPEAL by defendants from *Lewis (John B.), Judge.* Judgments entered 16 September 1987 in Superior Court, ROBESON County. Heard in the Court of Appeals 7 September 1988.

This is a criminal action wherein each defendant was charged in proper bills of indictment with "hav[ing] in his possession implements of housebreaking . . ." in violation of G.S. 14-55 and with attempted breaking or entering in violation of G.S. 14-54(b). At trial, evidence was presented which tends to show:

Jerry King, owner of a pawnshop and movie rental store, closed his business at 5:00 p.m. on 28 May 1987, and left for the day. Later that night, Sergeant James Edwards of the Red Springs Police Department checked the rear door of King's business while on routine foot patrol. Finding nothing wrong with the shop's door or any other door in the downtown area, Edwards returned to the police station and got his police vehicle.

Edwards later returned downtown, and he drove by the well-lit alley where the rear door of King's business was located. He saw two males, one taller than the other, walking out of the alley in the other direction. He stopped his car and walked down the alley where he noticed the rear door of King's business was damaged. The lock was dented and the steel plate was bent away from the surface of the door. Along with Officer Carl Pearson, he searched the area at about 1:00 a.m. He then saw a car parked in a church driveway nearby and called for a check of ownership.

Two blocks from the car, Edwards found defendants, who matched the height of the men he had seen earlier. After questioning defendants, Edwards took them to the police station. He later returned to the scene with defendants' shoes and compared them to shoe prints around the car and King's business. The prints matched, but later attempts at making plaster casts of the prints failed. The car was found to be registered to Tommy General, defendant General's brother, and Tommy General's driver's license was found in the car. In a dumpster near the

pawnshop's rear door, the officers found a blue jacket, a pair of bolt cutters and a pair of gloves.

During the trial, Officer John Trogdon of the Fayetteville Police Department testified that he knew defendant Robeson as Victor Lee Ford and that he knew him from Cumberland County. Trogdon, a fingerprint expert, testified that the fingerprints of Victor Lee Stephens Ford matched those of defendant Robeson. He compared a card with a fingerprint labeled Victor Lee Stephens Ford to a card with a fingerprint labeled James Robeson and said that "[t]he individual in question made the impression on both cards."

Defendants presented no evidence. The jury found defendants guilty on all counts. Defendant General was sentenced to five years imprisonment for possession of implements of housebreaking and two years imprisonment for attempted breaking or entering. Defendant Robeson was sentenced to seven years imprisonment for possession of implements of housebreaking and two years for attempted breaking or entering. Defendants appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General D. David Steinbock, for the State.*

*Earl H. Strickland for defendant, appellant Anthony General.*

*William L. Davis, III, for defendant, appellant James Robeson.*

HEDRICK, Chief Judge.

[1] Defendants first contend the trial court erred by denying defendant Robeson the right to cross-examine or question Sergeant Edwards or to present evidence during a voir dire hearing. At trial, when Sergeant Edwards was asked on direct examination by the prosecutor whether he questioned defendants, defendant Robeson's counsel requested a voir dire hearing. The trial judge asked defendant Robeson's counsel what the purpose of the voir dire was, and counsel responded, ". . . I didn't know what he was getting ready to say about the statements. . . . He was getting ready to say what he said after he advised him of his rights." The purpose of the request for a voir dire hearing was clearly to determine admissibility of statements made by defendants while in custody. Such a hearing is required, when requested, before

such evidence is admissible. *State v. Catrett,* 276 N.C. 86, 171 S.E. 2d 398 (1970).

In this case, however, there was no statement made by defendants to the witness, and there was therefore no attempt to introduce any evidence that even required a voir dire hearing. When the trial judge was satisfied that no statement was to be offered, he properly ended the voir dire as to such statements.

The trial judge then proceeded to allow a voir dire on the admissibility of certain exhibits, although there had been no request to do so. At this point in the trial, no connection had been made between the exhibits and defendants. The trial judge ended the voir dire before defendant Robeson's counsel had a chance to question the witness. No undue prejudice could have occurred due to this because a voir dire was not necessary at that point because defendants had a later opportunity to object to admission of the exhibits, and because the exhibits were in fact admissible. As the trial judge stated, the questions asked during voir dire could have been asked in the presence of the jury on cross-examination. This assignment of error has no merit.

[2] Defendants next argue the trial court erred by admitting hearsay testimony of Sergeant Edwards. Sergeant Edwards testified that he was told over the police radio that the car he saw parked near the crime scene was registered to defendant General's brother. Assuming *arguendo* that this was improperly admitted hearsay, the same evidence of the car's ownership was later admitted without objection when Sergeant Edwards testified defendant General told him the car belonged to his brother. It is well-settled that where evidence is admitted over objection, and the same evidence is later admitted without objection, the benefit of the objection is lost. *State v. Whitley,* 311 N.C. 656, 319 S.E. 2d 584 (1984). Defendants' argument is meritless.

[3] Defendants also argue the trial court committed error by admitting into evidence testimony concerning an experiment with a pair of bolt cutters. Experimental evidence is admissible "when the trial judge finds it to be relevant and of probative value." *State v. Jones,* 287 N.C. 84, 98, 214 S.E. 2d 24, 34 (1975). It is clear the trial judge here correctly found the experiment which compared the bolt cutters to dents made in the pawnshop's door was relevant and of probative value. Defendants further contend,

however, that the trial court erred because no proper foundation was laid for admission of the bolt cutters into evidence. We disagree. Although a chain of custody is required, *State v. King,* 311 N.C. 603, 320 S.E. 2d 1 (1984), the witness here adequately identified the bolt cutters as those found at the scene. Any weakness in the chain of custody goes to the weight of the evidence rather than the admissibility. *State v. Brooks,* 83 N.C. App. 179, 349 S.E. 2d 630 (1986). Defendants were in no way unduly prejudiced by admission of this evidence.

Defendants also argue the other exhibits were improperly admitted since no proper foundation was laid. Upon review of the record, we find that Exhibits 1, 2, 1A and 1B were identified and that testimony indicated there had been no material change in them between their seizure and the time of trial. Therefore, under *State v. King,* 311 N.C. 603, 320 S.E. 2d 1 (1984), there was sufficient foundation for admission of the exhibits.

[4] Defendants also contend the trial court erred by admitting testimony concerning shoe print comparison evidence. Sergeant Edwards and Officer Pearson were permitted to testify that shoe prints at the pawnshop and near the car matched those of defendants' shoes. A non-expert may testify as to shoe print comparisons. *State v. Jackson,* 302 N.C. 101, 273 S.E. 2d 666 (1981). Defendants argue, however, this evidence is the only evidence connecting them to the crime, and therefore they challenge the sufficiency of the evidence.

When the sufficiency of evidence is challenged, there must be a determination of whether there is substantial evidence of each element of the offenses charged and evidence that the defendant committed the crime. *State v. Bullard,* 312 N.C. 129, 322 S.E. 2d 370 (1984). Upon review of the record, we find there is substantial evidence of each element of the offenses. As for evidence that defendants were the perpetrators, defendants argue the test first stated in *State v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908 (1949), should apply. In *Palmer,* our Supreme Court said shoe print evidence had "no legitimate or logical tendency to identify an accused as the perpetrator of a crime unless" there were certain requirements met: "(1) that the shoeprints were found at or near the place of the crime; (2) that the shoeprints were made at the time of the crime; and (3) that the shoeprints correspond to shoes

worn by the accused at the time of the crime." *Id.* at 213-14, 52 S.E. 2d at 913. These circumstances test the weight of the evidence. *State v. Jackson*, 302 N.C. 101, 273 S.E. 2d 666 (1981). In this case, when the shoe print evidence is considered along with other evidence, there is enough to submit the case to the jury. This argument is without merit.

[5]   Finally, defendants argue Exhibits 3 and 4 were improperly admitted, and that testimony of Officer Trogdon concerning the exhibits should have been excluded by the trial court. Trogdon's testimony consisted of comparing fingerprints taken from defendant Robeson to those of Victor Lee Stephens Ford. Trogdon testified the fingerprints matched and that he knew Robeson as Victor Ford from Cumberland County. Defendants contend this was evidence of defendant Robeson's prior bad character and reputation, and therefore inadmissible. At trial, the prosecutor contended the testimony was admissible under G.S. 8C-1, Rule 404(b) and that it was offered "to show the identity of the defendant." The trial court admitted the testimony for this purpose. G.S. 8C-1, Rule 404(b) provides:

> *Other crimes, wrongs, or acts.* — Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

The State now argues on appeal that the testimony is not evidence of defendant Robeson's bad character or reputation, and that "there was no evidence presented of other 'crimes, wrongs, or acts' . . . ." The State further argues that if this Court does find the testimony to be evidence of "crimes, wrongs, or acts," that the Rule 404(b) identity exception should be applied.

It is unclear for what purpose the prosecutor elicited the testimony of Officer Trogdon. An inference that can be drawn from the testimony of this Fayetteville police officer who knew defendant Robeson by an alias is that he had been involved in some other crime or that he used other names for some illegal purpose. The contention that the testimony is admissible for purposes of identity under Rule 404(b) is without basis. It was clear at trial

State v. General

who was being tried and witnesses specifically identified defendant Robeson. There was no evidence presented that defendant Robeson ever gave a different name to anyone. The only mention of his use of the name Victor Ford before Trogdon's testimony was by the prosecutor during voir dire of the jury before any evidence was presented. There was no question of identity and for this reason, the testimony should not have been admitted under Rule 404(b).

Even if the testimony did not present evidence of "other crimes, wrongs, or acts," it was irrelevant and unduly prejudicial. We cannot say the outcome of defendant Robeson's trial would have been the same absent the testimony of Trogdon. For that reason, we remand defendant Robeson's case to the Superior Court of Robeson County for a new trial.

Defendant General also contends when the trial court allowed the testimony of Officer Trogdon it committed error with regard to him. We disagree. The testimony dealt only with defendant Robeson and not with defendant General. The evidence presented was not unduly prejudicial to defendant General. *See State v. Anderson*, 208 N.C. 771, 182 S.E. 2d 643 (1935). For this reason, there was no error in defendant General's trial.

The result with respect to defendant General is no error; with respect to defendant Robeson, new trial.

Judges ARNOLD and WELLS concur.