IN THE MATTER OF DANNY REED, RESPONDENT

No. 7817DC618

(Filed 19 December 1978)

**Insane Persons § 1— petition for commitment—insufficiency of affidavit**

> An affidavit in a petition for involuntary commitment stating that respondent "is believed to have been on drugs for a number of years," that he "is so mixed up," and that he "is now at a place where he is dangerous to himself" was insufficient to establish reasonable grounds for the issuance of a custody order.

APPEAL by respondent from *Allen (Claude W.), Judge.* Ordered entered 9 March 1978 in District Court, GRANVILLE County, transferred to ROCKINGHAM County in accordance with a directive from the Administrative Office of the Courts. Heard in the Court of Appeals 15 November 1978 in Winston-Salem.

On the affidavit of his cousin, respondent was taken into custody. At his commitment hearing, he moved to dismiss on the ground that the petition for commitment was so vague as to violate both the statutory standard and due process, so that there could have been no finding of probable cause for issuance of the custody order. The trial judge agreed that there was an absence of fact in the petition for commitment and that he did not know what the statements in the petition meant, but he reserved ruling on the motion until after he had heard the evidence in the case, "in the hopes that the evidence would elucidate the meaning of the Petition." At the close of the evidence, the judge denied respondent's motion and ordered his commitment. Respondent appeals.

*Attorney General Edmisten, by Associate Attorney Christopher S. Crosby, for the State.*

*Susan Freya Olive, for respondent appellant.*

ERWIN, Judge.

G. S. 122-58.3 sets out the procedure by which a person may be involuntarily committed to a treatment facility. The statute provides that a person who has knowledge of a mentally ill or inebriate person who is imminently dangerous to himself or others may appear before the appropriate officer and execute an af-

fidavit to that effect and petition for issuance of a custody order. "The affidavit shall include the facts on which the affiant's opinion is based." G.S. 122-58.3(a). "If the clerk or magistrate finds reasonable grounds to believe that the facts alleged in the affidavit are true and that the respondent is probably mentally ill or inebriate and imminently dangerous to himself or others," he shall issue a custody order. G.S. 122-58.3(b). Seeking to have respondent committed, the petitioner here stated in her affidavit:

> "2. That the respondent is:
>
> ☒   a mentally ill or inebriate person who is imminently dangerous to himself or others.
>
> The facts upon which this opinion is based are as follows: Respondent is believed to have been on drugs for a number of years. He is so mixed up. He is now at a place where he is dangerous to himself."

Respondent argues that this is insufficient to satisfy either the statute or due process. We agree.

The statute clearly requires that the affidavit contain "*the facts* on which the affiant's opinion is based." (Emphasis added.) Here, no facts appear in the petition. First appears merely a statement of belief without an indication of whether the condition presently exists, or of any result of the condition that might indicate that respondent is "imminently dangerous." The trial judge himself "agreed that only the phrase 'He is so mixed up' *even approached* being a statement of fact, and that . . . it was a vague phrase and he did not know what it meant." (Emphasis added.) The third sentence is clearly a conclusion of the affiant, and not a fact.

In *Samons v. Meymandi,* 9 N.C. App. 490, 177 S.E. 2d 209 (1970), *cert. denied,* 277 N.C. 458, 178 S.E. 2d 225 (1971), this Court considered a portion (since repealed) of our involuntary commitment law which set out the procedures for emergency hospitalization and required that the committing physician's statement be sworn to. The defendant's physician testified that he did not take an oath at the time he signed his statement. We said:

> "We are of the opinion . . . that the Legislature meant exactly what it says. . . . Since the statute was not complied

with, plaintiff was deprived of her liberty without legal process.

> Taking a person without the intervention of any court proceeding . . . to a State Hospital for examination and treatment is a drastic procedure. . . .

> There being a statute which provides for a drastic remedy, it is encumbent upon all that use it to do so with care and exactness, even though the user may think it 'impractical.' "

*Id.* at 497, 177 S.E. 2d at 213. Here, the determination by a neutral officer of the court that reasonable grounds exist for the issuance of a custody order is the "court proceeding" required by the Legislature in this "drastic remedy."

"Reasonable grounds" has been found to be synonymous with "probable cause," *State v. Shore,* 285 N.C. 328, 204 S.E. 2d 682 (1974), and our courts have held that "[p]robable cause cannot be shown 'by affidavits which are purely conclusory. . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp. . . .'" *State v. Campbell,* 282 N.C. 125, 130-31, 191 S.E. 2d 752, 756 (1972), quoting *United States v. Ventresca,* 380 U.S. 102, 13 L.Ed. 2d 684, 85 S.Ct. 741 (1965). The United States Supreme Court has recognized that the necessity for the protection afforded by a neutral determination of probable cause arises in civil as well as criminal contexts, *see Marshall v. Barlow's, Inc.,* --- U.S. ---, 56 L.Ed. 2d 305, 98 S.Ct. --- (1978), and that there is a real potential for deprivation of due process in commitment proceedings. *See Minnesota ex rel. Pearson v. Probate Court,* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). A commitment order is essentially a judgment by which a person is deprived of his liberty, *In re Wilson,* 257 N.C. 593, 126 S.E. 2d 489 (1962), and as a result, he is entitled to the safeguard of a determination by a neutral officer of the court that reasonable grounds exist for his original detention just as he would be if he were to be deprived of liberty in a criminal context. We find that the petition here satisfied neither statutory nor due process requirements, and so was insufficient to establish reasonable grounds for the issuance of a custody order.

The judgment of the trial court is reversed, and the order of commitment stricken.

Judges PARKER and MARTIN (Robert M.) concur.