IN THE MATTER OF MATTHEW ZOLLICOFFER

No. COA03-1387

(Filed 20 July 2004)

### 1. Mental Illness— involuntary commitment—hearsay information

The trial court did not err by failing to dismiss the petition for involuntary commitment even though information contained in the affidavit and petition for involuntary commitment presented to the magistrate contained hearsay, because: (1) the Court of Appeals has previously held that a magistrate may consider hearsay evidence as a basis for issuing an involuntary commitment custody order despite the pertinent statute's silence on the issue; (2) though any deprivation of a person's liberty through an involuntary commitment custody order is an intrusion on that person's liberties, our laws provide for a rapid and thorough review of this action; (3) the two psychological examinations and the hearing within 10 days of the initial detainment provides respondent with adequate assurance that he is not being improp-

**IN RE ZOLLICOFFER**

[165 N.C. App. 462 (2004)]

erly detained; and (4) a hearing before a magistrate under N.C.G.S. § 122C-261 upon a petition for the involuntary commitment of a person is a miscellaneous proceeding under Rule 1101, and the rules of evidence do not apply.

**2. Mental Illness— involuntary commitment—dangerous to self**

The trial court did not err in a mental illness hearing by finding as a matter of law that respondent was dangerous to himself and did not fail to specifically state findings of fact in support of this conclusion, because the failure of a person to properly care for his medical needs, diet, grooming, and general affairs meets the test of dangerousness to self.

Appeal by respondent from order entered 5 June 2003 by Judge J. Larry Senter in the District Court of Granville County. Heard in the Court of Appeals 26 May 2004.

*Willa G. Mills, for respondent-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Angel E. Gray, for the State.*

STEELMAN, Judge.

Lori Lowder, mother of respondent, petitioned for the involuntary commitment of respondent pursuant to N.C. Gen. Stat. § 122C-261 (2003) on 27 May 2003. The affidavit and petition requesting respondent's commitment alleged that "the respondent had a history of mental illness;" that he was a diagnosed paranoid schizophrenic; that he "is not on medication at this time and when prescribed refused to take it;" that he "made threats to other residents [of his apartment complex] that he was going to kill them, and put his vehicle in reverse to try to back over some children;" that respondent "seemed very agitated" when he spoke with his grandfather; and that he refused to allow anyone in his apartment. Based on this petition, a magistrate signed an order involuntarily committing respondent for mental health examination. Respondent was examined by Dr. Nawab Alnaquib of Centerpoint Human Services on 27 May 2003. Dr. Alnaquib determined that respondent had been non-compliant with his required medications; that he had made "homicidal threats that he would attack residents and kill them;" and that he "would want to reverse his vehicle back on children and kill them." Dr. Alnaquib expressed the opinion that respondent was mentally ill, dangerous to himself and others, and should be admitted to John Umstead Hospital

for treatment. Respondent was sent to Umstead Hospital, and examined by Dr. Rosario Hidalgo. Dr. Hildalgo diagnosed respondent as having chronic paranoid schizophrenia and as being non-compliant with treatments. She further determined that respondent was "having dangerous behavior towards self and others." Dr. Hidalgo admitted respondent for treatment at Umstead Hospital.

A hearing was held on 5 June 2003 in the District Court of Granville County, before Judge Senter, pursuant to the provisions of N.C. Gen. Stat. § 122C-267(a) (2003). Respondent moved to dismiss the proceedings based on insufficiency of the affidavit and petition for involuntary commitment. Judge Senter denied this motion. The State offered into evidence an affidavit from Dr. Catherine Soriano, respondent's attending physician at Umstead Hospital. The affidavit contained Dr. Soriano's opinion that respondent was not complying with his medication requirements; was not participating fully in his treatment; appeared paranoid; that she suspected he was witholding information about himself in an attempt to "expedite his release;" that he does not accept he is mentally ill; he requires inpatient treatment; and based on the behavior indicated in the petition, that he "may present a risk for danger to others" as well as himself. Dr. Soriano recommended ninety days of inpatient treatment. Respondent's mother testified that respondent "continued to get worse since his last admission." She further testified that respondent's apartment was in disarray, there were holes in the walls, his furniture was "destroyed," and his refrigerator was unplugged and empty. She further testified that she had repaired respondent's apartment two or three times in the past; that he had been evicted and had nowhere to live; that he had threatened her on one occasion; that respondent had been involuntarily committed on three previous occasions; and that his family had attempted to get respondent to attend outpatient treatment five different times. Respondent testified, and denied his mental illness, denied the threats at his apartment complex, and denied having caused the damage in his apartment. Judge Senter found that respondent was mentally ill and dangerous to himself, and committed him to Umstead Hospital for a period not to exceed ninety days. Respondent appeals.

[1] In respondent's first assignment of error he argues that the trial court erred by failing to dismiss the petition for involuntary commitment because some of the information contained in the affidavit and petition for involuntary commitment presented to the magistrate was hearsay. We disagree.

## IN RE ZOLLICOFFER

[165 N.C. App. 462 (2004)]

N.C.R. Evid. Rule 802 states that "hearsay is not admissible except as provided by statute or by these rules." N.C.R. Evid. Rule 1101 exempts certain proceedings from the Rules of Evidence, including Rule 1101(b)(3), which exempts "Miscellaneous Proceedings." These miscellaneous proceedings include "Proceedings for extradition or rendition; first appearance before district court judge or probable cause hearing in criminal cases; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; proceedings with respect to release on bail or otherwise." N.C. Gen. Stat. § 122C-261 (2004) provides the authority for involuntary commitment for mentally ill persons not requiring immediate hospitalization. N.C. Gen. Stat. § 122C-261 states in pertinent part:

> (a) Anyone who has knowledge of an individual who is mentally ill and either (i) dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b., or (ii) in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness, may appear before a clerk or assistant or deputy clerk of superior court or a magistrate and execute an affidavit to this effect, and petition the clerk or magistrate for issuance of an order to take the respondent into custody for examination by a physician or eligible psychologist. The affidavit shall include the facts on which the affiant's opinion is based.

> (b) If the clerk or magistrate finds *reasonable grounds* to believe that the facts alleged in the affidavit are true and that the respondent is probably mentally ill and either (i) dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b., or (ii) in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness, the clerk or magistrate shall issue an order to a law enforcement officer or any other person authorized under G.S. 122C-251 to take the respondent into custody for examination by a physician or eligible psychologist.

(emphasis added). N.C. Gen. Stat. § 122C-261 does not expressly state whether the affiant's knowledge must be based on personal knowledge or whether it can be in whole or in part based upon hearsay. This Court has determined that a person facing involuntary commitment "is entitled to the safeguard of a determination by a neutral officer of the court that reasonable grounds exist for his original detention just

as he would be if he were to be deprived of liberty in a criminal context." *In re Reed*, 39 N.C. App. 227, 229, 249 S.E.2d 864, 866 (1978) (This opinion was written under the former involuntary commitment statute N.C. Gen. Stat. § 122-58.3). " 'Reasonable grounds' has been found to be synonymous with 'probable cause[.]' " *Id.* citing *State v. Shore*, 285 N.C. 328, 204 S.E.2d 682 (1974). We find that the requirements for a custody order under N.C. Gen. Stat. § 122C-261 are analogous to those where a criminal suspect is subject to loss of liberty through the issuance of a warrant for arrest. In both instances a magistrate or other approved official must find probable cause (though under N.C. Gen. Stat. § 122C-261 the synonymous term reasonable grounds is used) supporting the issuance of the order or warrant. In both cases the magistrate has the power to deprive a person of his liberty pending a more thorough and demanding determination of the evidence against him. As our Supreme Court has stated in the criminal context:

> Probable cause "does not mean actual and positive cause, nor does it import absolute certainty. The determination of the existence of probable cause is not concerned with the question of whether the offense charged has been committed in fact, or whether the accused is guilty or innocent, but only with whether the affiant has reasonable grounds for [his] belief.

*State v. Campbell*, 282 N.C. 125, 129, 191 S.E.2d 752, 756 (1972) (citation omitted). "The affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant[.]" *Id.* (This discussion was in the context of a challenge to a search warrant. However, the probable cause requirements for the issuance of a search warrant and an arrest warrant are the same. *State v. Harvey*, 281 N.C. 1, 187 S.E.2d 706 (1972)).

Hearsay evidence is sufficient to support an affidavit supporting an arrest warrant, even though not admissible to prove guilt at trial because: "There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them." *Jones v. United States*, 362 U.S. 257, 270, 4 L. Ed. 2d 697, HR14 (1960) *Overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 65 L. Ed. 2d 619 (1980) (citing *Brinegar v. United States*, 338 U.S. 160, 172, 93 L. Ed. 1879 (1949); N.C. Gen. Stat. § 1101(b)(3).

In *In re Hernandez*, 46 N.C. App. 265, 270, 264 S.E.2d 780, 783 (1980) this Court held that a magistrate could rely on hearsay evidence presented by a police officer to issue a custody order for involuntary commitment. *Hernandez* was decided under former N.C. Gen. Stat. § 122-58.18 pertaining to law enforcement officers who take mentally ill persons into custody. Former N.C. Gen. Stat. § 122-58-18 required the law enforcement officer to execute an affidavit under former N.C. Gen. Stat. § 122-58.3. Former N.C. Gen. Stat. § 122-58.3(a) provided:

> Any person who has knowledge of a mentally ill or inebriate person who is imminently dangerous to himself or others . . . may appear before a clerk or assistant or deputy clerk of superior court or a magistrate of district court and execute an affidavit to this effect and petition the clerk or magistrate for issuance of an order to take the respondent into custody for examination by a qualified physician. The affidavit shall include the facts on which the affiant's opinion is based.

This Court in *Hernandez* reasoned in support of its ruling, "the legislature has provided further protection for the respondent in circumstances such as the one before us by requiring that a hearing shall be held in district court within ten days of the day the respondent is taken into custody, at which time the legislature has made adequate provision for protection of the respondent's rights." *Hernandez*, 46 N.C. App. at 269, 264 S.E.2d at 782. This Court has thus previously held that a magistrate may consider hearsay evidence as a basis for issuing an involuntary commitment custody order, despite the statute's silence on the issue.

Our current law is quite similar to that under which Hernandez was decided. Within a reasonable time after a respondent subject to an involuntary commitment order of a magistrate is taken in custody, he must be transported to an approved facility. N.C. Gen. Stat. § 122C-263 (2003). Within 24 hours of arrival at the facility, he must be examined by a physician or eligible psychologist. *Id.* If the physician or eligible psychologist makes a determination that the respondent is a danger to self or others, he shall recommend inpatient treatment. *Id.* At a time no later than the next business day following the finding of dangerousness to self or others under N.C. Gen. Stat. § 122C-263, the respondent must be examined a second time by a physician, and if the respondent is again determined to be a danger to self or others, he will be detained pending a full hearing before the district court. N.C. Gen. Stat. § 122C-266 (2003). The hearing shall

be held within 10 days of respondent's being taken into custody. N.C. Gen. Stat. § 122C-268 (2003).

Though any deprivation of a person's liberty through an involuntary commitment custody order is an intrusion on that person's liberties, our laws provide for a rapid and thorough review of this action. We must strike a balance between the intrusion on personal liberty and the need for an efficient method of protecting the public from those who may be dangerous to either themselves or others due to mental illness. It is reasonable in both the criminal and involuntary commitment contexts to allow magistrates and other approved officials to order a brief detention based on hearsay evidence, provided there is a mechanism in place to review the detainment within a reasonable period of time. The two psychological examinations and the hearing within 10 days of the initial detainment in this context provides respondent with adequate assurance that he is not being improperly detained.

We hold that a hearing before a magistrate under N.C. Gen. Stat. § 122C-261 upon a petition for the involuntary commitment of a person is a "miscellaneous proceeding" under Rule 1101, and the rules of evidence do not apply. This assignment of error is without merit.

[2] In respondent's second and third assignments of error he argues the trial court erred by finding as a matter of law that respondent was dangerous to himself, because the evidence was insufficient to support that finding, and the trial court failed to specifically state findings of fact in support of this conclusion. We disagree.

N.C. Gen. Stat. § 122C-271(b)(2) (2003) states: "If the court finds by clear, cogent, and convincing evidence that the respondent is mentally ill and is dangerous to self, as defined in G.S. 122C-3(11)a., or others, as defined in G.S. 122C-3(11)b., it may order inpatient commitment at a 24-hour facility described in G.S. 122C-252 for a period not in excess of 90 days." "The trier of fact alone must determine whether the evidence presented is clear, cogent and convincing. Our only function on appeal is to determine whether there was any competent evidence to support the factual findings made." *In re Medlin*, 59 N.C. App. 33, 36, 295 S.E.2d 604, 606 (1982) (This opinion was decided under the now repealed N.C. Gen. Stat. § 122-58.7(i)).

Respondent does not contest the conclusion that he is mentally ill, he only contests the conclusion that he presents a danger to himself. Judge Senter's involuntary commitment order incorporates Dr.

Soriano's examination and recommendation of 3 June 2003 in his findings of fact. In Dr. Soriano's recommendation she states that respondent has a history of chronic paranoid schizophrenia, that respondent admits to medicinal non-compliance which puts him "at high risk for mental deterioration," that respondent does not cooperate with his treatment team, and that he "requires inpatient rehabilitation to educate him about his illness and prevent mental decline." These findings of fact were not objected to in respondent's assignments of error, thus they are binding on appeal.

"We have held specifically that the failure of a person to properly care for his/her medical needs, diet, grooming and general affairs meets the test of dangerousness to self." *In re Lowery*, 110 N.C. App. 67, 72, 428 S.E.2d 861, 864 (1993) (citation omitted). Judge Senter's findings of fact support his conclusion of law that respondent is dangerous to himself. These assignments of error are without merit.

AFFIRMED.

Judges TYSON and BRYANT concur.